Case 5:08-cv-01971-CLS   Document 9   Filed 02/25/10   Page 1 of 9

FILED
 2010 Feb-25  PM 04:30
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **RICHARD E. TRUSS,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| vs. | )   Civil Action No. CV-08-S-1971-NE |
| | ) |
| **MICHAEL J. ASTRUE, Commissioner, Social Security Administration,** | ) ) ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Richard Truss commenced this action on October 23, 2008, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability, disability insurance, and supplemental security income benefits.  For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Briefs are not required in social security appeal cases,[1] and claimant did not file a supporting brief. Nevertheless, this court has carefully reviewed the entire record in reaching its determination of the merits of claimant's appeal.

Claimant alleged that he became disabled on November 18, 2006, due to a "nerve condition" and back problems. He last met the insured status requirements of the Social Security Act on December 31, 2009.[2] Claimant therefore bore the burden of proving disability on or prior to December 31, 2009. *See* 42 U.S.C. § 423(a) and (c); 20 C.F.R. §§ 404.101, 404.130, and 404.131; *Ware v. Schweiker,* 651 F. 2d 408, 411 n.3 (5th Cir. July 1981).[3]

The ALJ found that claimant had the "severe" impairments of anxiety, diabetes mellitus II, peripheral neuropathy, myoclonus, cervical dystonia, and lateral collis.[4] He also found that claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.[5] Despite claimant's severe impairments, the ALJ concluded that claimant retained the residual

---

[1] *See* doc. no. 7 (briefing letter).
[2] *See* Tr. at 10, 68.
[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.
[4] Tr. at 12.
[5] Tr. at 14.

functional capacity to perform a reduced range of light work that allows for a sit-stand option; frequent pushing and pulling with hand controls; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, and crouching; frequent fine manipulation; no climbing ladders, ropes or scaffolds; and no exposure to vibrations, hazardous machinery, or unprotected heights.[6] The ALJ also discredited claimant's subjective complaints of pain and other subjective symptoms.[7] This court concludes that the ALJ's findings were supported by substantial evidence and in accordance with governing law.

First, the record supports the ALJ's determination that claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Specifically, while claimant did experience some neuropathy, there is no evidence of neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station, as required by Listing 9.08 (for diabetes mellitus). 20 C.F.R. pt. 404, subpt. P, appx. 1, § 9.08a (listings). Furthermore, claimant did not exhibit marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of

---

[6]Tr. at 15.
[7]Tr. at 17.

3

decompensation, each of extended duration, as required by Listing 12.06 (for anxiety-related disorders). 20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.06 (listings).

The ALJ also properly considered the opinion of Dr. Michael Hennigan, claimant's treating physician. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. Additionally, the ALJ is not required to accept a conclusory statement from a medical source — even a treating source — that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

Dr. Hennigan completed a Medical Source Opinion (Physical) form on June 19, 2006. He indicated that claimant could stand for thirty minutes at a time, and for a total of one hour in an eight-hour workday; that claimant could walk for thirty minutes at a time, and for a total of one hour in an eight-hour workday; and that claimant could sit for two hours at a time, and for a total of four hours in an eight-hour workday. Claimant could only occasionally lift ten pounds, and he could not

constantly or frequently lift any weight. He could never push or pull with his arms or legs, climb, balance, stoop, kneel, crouch, crawl, reach overhead, handle, finger, feel, talk, or hear. He could only occasionally be exposed to extreme cold and wetness or humidity, and he could never be exposed to extreme heat, vibration, fumes, noxious odors, dusts, mists, gases, poor ventilation, moving mechanical parts, work in high exposed places, or driving automotive equipment.[8] Dr. Hennigan also submitted a cover letter dated June 19, 2006, stating:

> I have been caring for Richard since I first saw him on 2/09/06, when he presented with multiple problems as listed below, including poorly controlled diabetes with diabetic neuropathy, hyperlipidemia, occult vascular disease as well as tremor, dizziness and hypertension. He has been seen by Dr. Stover, U.A.B. neurology professor, who felt that he had myoclonus and cervical dystonia with random jerks and did discuss botulism toxin injection for his lateril collis, but this apparently has not happened. He was also seen in Decatur by Dr. Steven Suggs for neurology with EEG negative, but Depakote prescribed for the myoclonic jerking. He was seen by Dr. John Johnson for neurosurgery in Huntsville which again he felt was related to spasmodic torticollis and referred him then to Dr. Steven Suggs.
>
> On initial evaluation here his Hemoglobin A1C was 10.0 on 2/14/06 and confirmed at 11% on 3/22/06 down to 7.2% on 5/08/06, showing improvement in his mean or average blood sugars from 240, 270 and now 156 respectively to translate this into the usual glucose scale. At these very toxic levels of glucose with his first fasting blood sugar here being 284 and down to 150 on 5/08/06, diabetic neuropathy would be the expected norm rather than unexpected complication and is likely major contributor to this. Even as we work to further control his diabetes with which he has been largely compliant, although unable to successfully lose weight to date, the pre-existing neuropathy would at

---

[8]Tr. at 305-06.

best slow progression, but would not be expected to remit at this point.

  As such my evaluation is that he be considered permanently and totally disabled and he be given appropriate consideration in this light.[9]

The ALJ assigned little weight to Dr. Hennigan's assessment because it was based on plaintiff's subjective complaints, on the fact that peripheral neuropathy was the "expected norm," and on claimant's history of high glucose levels, rather than on any actual assessment of claimant's physical abilities. The ALJ also noted that Dr. Hennigan's assessment was not consistent with the doctor's own records, with the other medical evidence of record, or with claimant's reports of his daily activities. Finally, the ALJ noted that Dr. Hennigan's assessment was not realistic, as it precluded claimant from ever talking, hearing, or doing things with his hands.[10] These conclusions were supported by substantial evidence.

The ALJ instead afforded greater weight to the opinion of Dr. Natividad Stover, an Assistant Professor of Neurology at the University of Alabama in Birmingham, who examined claimant on April 28, 2006. Dr. Stover noted that claimant suffered from diabetes and related jerky movements. Upon examination, claimant exhibited good motor strength (but with poor effort) in the upper and lower extremities. He exhibited decreased ability to detect light touch in his upper

---

[9]Tr. at 303.
[10]Tr. at 17-18.

extremities; his neck movements were mildly limited on the right side; and he had "good anterior posterior neck movements." Dr. Stover also found the following:

> [Claimant] has normal speech and facial expression. He displayed occasional involuntary movements in the eyes. I did not see spasms, and when I request him to keep the eyes open he is able to do it. he has a postural tremor affecting the upper extremities and I did not see tremor in the lower extremities. The tone is mildly increased in the neck, normal in the upper and lower extremities. He has mild difficulties doing finger taps, hand movements, and rapid alternating movements with the hands. He stands up slowly, states that he needs to use both hands, he is able to walk without the cane that he normally uses. He has occasional involuntary movements in the arms when walking. He is stable if I do a pull test. He has a big handwriting letters [sic], and is able to copy a spiral without problems.[11]

Dr. Stover noted that claimant suffered random jerking movements, but stated that some of the movements had "a functional flavor."[12] The ALJ concluded that Dr. Stover's opinion should be afforded greater weight because it was consistent with Dr. Stover's own medical records and with the other medical evidence of record, and because Dr. Stover was a specialist in the field of neurology.[13] The record supports the ALJ's conclusions about Dr. Stover's assessment, and Dr. Stover's assessment is consistent with the ALJ's residual functional capacity finding.

Finally, the ALJ properly considered claimant's complaints of pain and other subjective symptoms. To demonstrate that pain or other subjective symptoms render

---

[11]Tr. at 254.
[12]*Id.*
[13]Tr. at 18.

him disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

The ALJ properly applied the Eleventh Circuit pain standard. He found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[14] The ALJ adequately articulated reasons for not crediting claimant's testimony on pain. He stated that claimant's allegations were "so extreme as to appear implausible," especially considering claimant's reported daily activities, which included driving, manipulating objects with his hands and feet, visiting friends, shopping, reading, and watching television.[15] Claimant's allegations also were not

---

[14]Tr. at 17.
[15]*Id.*

consistent with the medical evidence of record, including results from EEG, X-ray, MRI, and NCV testing. Finally, the ALJ noted that the evidence — including poor effort upon examination and the "functional flavor" of some of claimant's movements — indicated that claimant might not be entirely credible. These conclusions were in accordance with applicable law and supported by substantial evidence of record.

Based on the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 25th day of February, 2010.

_____
United States District Judge